UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOEL SMITH, and FLORIDA CARRY,
INC., a Florida Not-for Profit Corporation,

Plaintiffs,

-vs-                                    Case No.  5:13-cv-347-Oc-10PRL

DEPUTY ANDY COX; SERGEANT
DAVE FIELDS, SHERIFF JEFFREY
DAWSY, and CITRUS COUNTY, a
Political subdivision of the State of
Florida,

Defendants.

_____/

## ORDER DISMISSING CASE

Plaintiffs Joel Smith and Florida Carry, Inc. filed a six-count Complaint pursuant

to 42 U.S.C. § 1983 against the Defendants, alleging violations of Mr. Smith's

constitutional rights during the course of his arrest by Defendant Citrus County Deputy

Sheriff Andy Cox on the afternoon of July 21, 2009 (Docs. 1, 16).[1]  On January 31,

2014, the Plaintiffs voluntarily dismissed all claims against Defendants Sergeant Dave

Fields, Sheriff Jeffrey J. Dawsey, and Citrus County (Doc. 25), and Judgment was

entered dismissing these Defendants without prejudice on February 5, 2014 (Doc. 29).

_____

[1]With leave of Court (Doc. 19), the Plaintiffs subsequently filed a First Amended Complaint, which is the operative pleading at this stage of the litigation, and that also alleges six § 1983 civil rights claims against the Defendants arising out of Mr. Smith's July 21, 2009 arrest (Doc. 16).

Thus, the only Defendant remaining in this case is Deputy Sheriff Andy Cox, who the Plaintiffs have sued in his individual capacity (Doc. 16, ¶ 1).

The case is now before the Court on Deputy Cox's motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), asserting the defense of qualified immunity (Doc. 23). The Plaintiffs, who are represented by counsel, have not filed a response to the motion, and the time for responding has long expired.[2]

Upon due consideration, and for the reasons discussed below, the Court finds that the motion to dismiss is due to be granted, and this case shall be dismissed.

## **Facts Alleged In the Amended Complaint**[3]

Plaintiff Joel Smith is a resident of Citrus County, Florida. Plaintiff Florida Carry, Inc., is a Florida Not-for-Profit Corporation with its principal place of business located at 1090 Wild Holly Drive, Port Orange, Florida 32129. At all times relevant to this case, Defendant Deputy Andy Cox was employed as a Sheriff's Deputy with the Citrus

---

[2]Nearly two months after the time for responding had expired, the Plaintiffs moved for an extension of time to file their response to the motion to dismiss (Doc. 24). The Magistrate Judge denied the request without prejudice due to the Plaintiffs' failure to show excusable neglect or good cause for their failure to file a timely response (Doc. 27). The Plaintiffs did not renew their motion, and have not otherwise responded to the motion to dismiss.

[3]The Plaintiffs have attached to their Amended Complaint a transcript from the Citrus County Sheriff's Office of a January 28, 2013 internal investigation interview of Deputy Cox (Doc. 16, Ex. A). Although the Plaintiffs do not quote verbatim from this transcript, they reference it throughout their Amended Complaint, and it is clear that they rely upon the transcript in alleging the salient facts of their case. The Court may therefore consider this transcript in ruling on Deputy Cox's motion to dismiss because it is clearly central to the Plaintiffs' claims, and Deputy Cox has not challenged its authenticity. See SFM Holdings, Ltd. v. Bank of Am., Sec., LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002).

County Sheriff's Office.   At the time of the events in question, Deputy Cox was assigned as a community resource officer patrolling the west side of Citrus County.

On the afternoon of July 21, 2009, Mr. Smith was driving his van on US Highway 19 off Miss Maggie Drive in Homosassa, Florida.   His wife was traveling in the passenger seat.   Deputy Cox was driving in the opposite direction on US Highway 19 and recognized Mr. Smith's van as a vehicle that was allegedly involved in drug activity in the area.   Specifically, Deputy Cox had previously observed Mr. Smith's van on several occasions parked in the driveway of a home that was under surveillance by the Sheriff's Office for selling drugs, and where Deputy Cox believed the occupants were manufacturing methamphetamines.[4]   As part of his investigation, Deputy Cox also had obtained information that several persons residing in the west side of Citrus County were carrying firearms out of fear of drug dealers who were working in that area.

Deputy Cox made a U-turn and began following Mr. Smith's van.   While following the van, Deputy Cox noticed that the license plate had an expired tag decal.   Deputy Cox then ran the license plate through the computer in his squad car, using the Law Enforcement "Premier" Program and the Driver and Vehicle Information Database.   The computer in his vehicle froze and Deputy Cox instead had to use the teletype equipment to run the license plate number.   Deputy Cox intended to wait until the check of the license plate was complete before deciding whether or not to pull Mr. Smith over.

---

[4]The Sheriff's Office later searched the home and did not find sufficient evidence to arrest any persons at that time.

If the license plate itself was valid and only the decal had expired, Deputy Cox probably would have decided not to stop Mr. Smith.

Before Deputy Cox was able to complete the check on Mr. Smith's license plate, Mr. Smith drove his van into a Walgreen's parking lot. Deputy Cox decided to conduct a traffic stop at that point in time. Deputy Cox stopped Mr. Smith at 2:20 p.m. at the north end of the parking lot. He activated his lights and siren, which automatically turned on the dashboard camera.[5]

Once Deputy Cox pulled the van over, he got out of the car and approached Mr. Smith. When Mr. Smith stopped his van, instead of staying inside his car, he stepped out of the vehicle to greet the officer. Deputy Cox asked Mr. Smith for his driver's license, which Mr. Smith provided after retrieving it from his back pocket. Deputy Cox then informed Mr. Smith that he stopped him because his decal had expired, and asked him for his vehicle registration and proof of insurance. Mr. Smith told Deputy Cox that he had a valid decal, but had forgotten to put it on his license plate.

Mr. Smith then turned and reached into his van to retrieve his registration and proof of insurance. As he was reaching for these documents, Mr. Smith's shirt rose up and the bottom of a gun holster was revealed on his right hip. Deputy Cox contends that he could see the entire firearm, while Mr. Smith alleges that only the bottom of the holster was visible. Deputy Cox drew his gun, bringing it up to his chest with the barrel

_____

[5]The Plaintiffs allege that they are in possession of the dashboard video of the traffic stop, but have not filed a copy of the video with the Court, and have not provided a copy to Deputy Cox.

pointed to the ground at Mr. Smith's feet.  Deputy Cox yelled at Mr. Smith "why do you have a weapon?" and Mr. Smith replied "I always carry a weapon."  Deputy Cox then pointed his gun at Mr. Smith's back and began yelling at him to get out of the van and put his hands up and on the vehicle, or Deputy Cox would "shoot him in the fucking back."  Mr. Smith complied, and Deputy Cox then yelled at him to "not fucking move."  Again, Mr. Smith cooperated.  Deputy Cox then ordered Mr. Smith to "get down on the fucking ground," which Mr. Smith also complied with, laying face down on the ground.

While he was on the ground, Mr. Smith tried to explain to Deputy Cox that he had a concealed weapons permit for the gun, but Deputy Cox would not listen.  He instead yelled at Mr. Smith to put his hands behind his back, which Mr. Smith did.  Deputy Cox then handcuffed Mr. Smith while he was lying face down on the pavement.  Mr. Smith again attempted to inform Deputy Cox that he had a valid concealed weapons permit, and Deputy Cox responded "I don't care if you have a permit or not."

Once Mr. Smith was secured, Deputy Cox directed his wife to exit the van and walk around to the front of the vehicle.  He asked Mr. Smith's wife if she had any weapons and patted her down.  He did not handcuff Mr. Smith's wife, or otherwise remove her from the vicinity of the van.  After verifying that the wife was unarmed, Deputy Cox told Mr. Smith that he never mentioned that he had a concealed weapons permit.  Deputy Cox then told Mr. Smith that he saw his gun pop out of the back of his shirt, which was a violation of his concealed carry permit.  Deputy Cox informed Mr. Smith that he was being arrested for displaying a firearm, and placed him in the back

of his squad car for transport to the sheriff's office.  Once Deputy Cox placed Mr. Smith in the back of his squad car, but while his wife was still standing in the vicinity of the vehicle, Deputy Cox searched Mr. Smith's van for additional weapons.  It is not alleged that any other weapons were located.

The charges against Mr. Smith were ultimately dismissed.

### Standard of Review

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."  Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv., 400 F.2d 465, 471 (5th Cir. 1968).  For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences that might be drawn from such allegations.  Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010); Jackson v. Okaloosa County, Fla., 21 F.3d 1532, 1534 (11th Cir.1994).  Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

In order to avoid dismissal, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" and that rises "above the speculative level." Speaker, 623 F.3d at 1380 (citing Twombly, 550 U.S. at 570, 127 S. Ct. at 1964–65,

1974).  A claim is facially plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Id.  (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)).  The plausibility standard requires that a plaintiff allege sufficient facts to nudge his "claims across the line from conceivable to plausible."  Twombly, 550 U.S. at 570, 127 S. Ct. at 1974.  Moreover, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions."  Id., 555 U.S. at 555, 127 S. Ct. at 1964-65.

## Discussion

### I.      Florida Carry, Inc.

The Plaintiffs have three claims remaining against Deputy Cox, all of which assert violations of Mr. Smith's Fourth and Fourteenth Amendment rights: (1) a claim of "willful, wanton, malicious, and abusive conduct" (Count IV); (2) a claim for unlawful search of Mr. Smith's van (Count V); and (3) a claim of unlawful arrest and detention (Count VI).  None of the claims assert any violations of any rights of Florida Carry, Inc., and the Plaintiffs have not alleged any facts relating to Florida Carry, other than its existence.  Instead, the Plaintiffs simply allege that Florida Carry has standing pursuant to Fla. Stat. § 790.33(3)(f), which provides that any person or organization that is

harmed by any state firearms statute, rule, regulation, or policy may file suit against any state entity, including municipalities, for injunctive relief and damages.

Deputy Cox seeks to dismiss Florida Carry on the ground that corporations do not have standing to assert claims under 42 U.S.C. § 1983 because they are not "a citizen entitled to the privileges and immunities secured by federal law for purposes of § 1983." L.S.T., Inc. v. Crow, 49 F.3d 679, 682-83 n. 6 (11th Cir. 1995).  However, this Circuit has determined that corporations possess standing under § 1983 to pursue claims for violations of their constitutional rights as a "person."  Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward County, 450 F.3d 1295, 1305 (11th Cir. 2006). See also First Nat'l Bank of Boston v. Bellotti, 435 U.S. 765, 780 n. 15, 98 S. Ct. 1407 (1978) ("It has been settled for almost a century that corporations are persons within the meaning of the Fourteenth Amendment."); Fla. Right to Life, Inc. v. Lamar, 273 F.3d 1318, 1323 (11th Cir. 2001) (holding that corporation may sue under § 1983 to vindicate its First and Fourteenth Amendment rights).  The Court therefore is not persuaded by Deputy Cox's argument.

This does not end the analysis, however, because Florida Carry must still satisfy the other requirements of constitutional standing.  Allen v. Wright, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 3324 (1984).  The minimum constitutional requirements for standing are:

> First the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, non 'conjectural' or 'hypothetical.'"  Second, there

must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). With respect to the requirement of an "injury in fact," the plaintiff must "show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" of the other party. Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S. Ct. 1601, 1608 (1979). See also West v. Atkins, 478 U.S. 42, 48, 108 S. Ct. 2250, 2254-55 (1988) ("To state a claim under § 1983 a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law.").

As previously mentioned, the Plaintiffs have not asserted any violations of Florida Carry's constitutional or federal rights, or alleged any injuries suffered by Florida Carry as the result of Deputy Cox's actions. The Amended Complaint does not even explain the relationship, if any, between Florida Carry and Mr. Smith. As such, Florida Carry has failed to allege that it has suffered any "injury in fact," or any causal connection between itself and the actions of Deputy Cox. Therefore, Florida Carry does not have constitutional standing to bring any claims in this case, and has failed to assert a valid claim for relief under § 1983. Florida Carry will be dismissed from this case.

**II.     Count IV - The "Abusive Misconduct" Claim**

The first claim asserted by Mr. Smith against Deputy Cox alleges that he engaged in "willful, wanton, malicious, and abusive conduct" and inflicted "abusive misconduct" upon Mr. Smith in violation of his Fourteenth Amendment rights. (Doc. 16, ¶¶ 91-93). Mr. Smith does not specify if he is asserting violations of his Fourteenth Amendment equal protection or due process rights, and does not provide any further details concerning the basis for this claim.

This claim is due to be dismissed for several reasons. First, to the extent this claim can be interpreted as asserting violations of his equal protection rights, Mr. Smith has not alleged any facts showing that he was treated differently from similarly situated persons. See Thigpen v. Bibb County, Ga., Sheriff's Dept., 223 F.3d 1231, 1237 (11th Cir. 2000) ("[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately."); E&T Reality v. Strickland, 830 F.2d 1107, 1109 (11th Cir. 1987) ("Different treatment of dissimilarly situated persons does not violate the equal protection clause."). Therefore, any equal protection claim shall be dismissed.

Second, to the extent Count IV is an attempt to assert violations of his due process rights, Mr. Smith has again failed to assert a viable claim. A review of the factual allegations show that the only possible "abusive misconduct" on the part of Deputy Cox would have been the use of foul language, the raising of his voice, and his

arrest of Mr. Smith.  The arrest is subsumed in Mr. Smith's wrongful arrest claim (Count VI).  And every court to consider the issue, including this Circuit, has held that using abusive or foul language, including threatening language and gestures by a custodial officer, does not amount to a constitutional violation.  See Evans v. City of Zebulon, Ga., 351 F.3d 485, 495-96 (11th Cir. 2003), *vacated on other grounds, rehearing en banc*, 407 F.3d 1272 (11th Cir. 2005); Doe v. Gooden, 214 F.3d 952, 955 (8th Cir. 2000); McFadden v. Lucas, 713 F.3d 143, 146 (5th Cir. 1983); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979); Johnson v. Glick, 481 F.2d 1028, 1033 (2nd Cir. 1973); T.W. ex rel. Wilson v. School Bd. of Seminole County, Fla., 2009 WL 1140101 at * 5 (M.D. Fla. Apr. 28, 2009).

Lastly, it is possible (although rather unlikely) that Count IV could be broadly interpreted to raise a claim of excessive force due to Mr. Smith's use of the phrase "unnecessary force" in the first paragraph of his Amended Complaint (Doc. 16, ¶ 1).,  This claim would also fail as Mr. Smith has not alleged that the force used by Deputy Cox was unreasonable.  See Troupe v. Sarasota Cnty., Fla., 419 F.3d 1160, 1166 (11th Cir. 2005) (To assert a violation of the Fourth or Fourteenth Amendments for excessive force, a plaintiff must allege that a seizure occurred and that the force used to effect the seizure was unreasonable).  Rather, the factual allegations show that Deputy Cox unholstered his firearm, pointed it at Mr. Smith's back, and handcuffed Mr. Smith; he did not engage in any other physical contact with Mr. Smith, did not deploy any weapons such as a taser, baton, or pepper spray, and there are no allegations that

the handcuffing of Mr. Smith was unnecessarily violent or rough.  Moreover, Mr. Smith has not alleged that he suffered any injuries whatsoever.  See Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003) ("[T]he application of de minimus force, without more, will not support a claim for excessive force in violation of the Fourth Amendment.  Here, even if the force applied by [the officer] in effecting the arrest – forcing [the plaintiff] down to the ground and placing him in handcuffs – was unnecessary, plainly it was not unlawful.  The amount of force used was de minimus") (emphasis supplied); Rodriguez v. Farrell, 280 F.3d 1341, 1352 (11th Cir. 2002) ("Painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal.").

For these reasons, Count IV will be dismissed.

### III.  Qualified Immunity

In Counts IV and V of his First Amended Complaint, Mr. Smith alleges that Deputy Cox violated his Fourth and Fourteenth Amendment rights by conducting an unreasonable search of his van, and for falsely arresting him.  Deputy Cox asserts entitlement to the defense of qualified immunity.

"Qualified immunity protects government officials performing discretionary functions from liability if their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Snider v. Jefferson State Cmty. Coll., 344 F.3d 1325, 1327 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508 (2002)).  Qualified immunity is an immunity from

suit rather than a mere defense to liability, and it is effectively lost if a case is erroneously permitted to go to trial.  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 2815 (1985).

To receive qualified immunity, a government official must first prove that he was acting within his discretionary authority.  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003).  Once the defendant establishes this, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Id.  The Supreme Court has established a two-part test to determine whether qualified immunity should apply.  The court must determine whether the plaintiff's allegations, if true, establish a constitutional violation.  Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2514 (2002).  This requires the court to determine whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  Gonzalez, 325 F.3d at 1234.  The second prong of the test requires the court to determine whether the right was "clearly established" at the time of the violation.  Lewis v. City of West Palm Beach, Fla., 561 F.3d 1288, 1291 (11th Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)).  Following the Supreme Court's clarification in Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009), these two determinations may be made in either order at the discretion of the court.  Lewis, 561 F.3d at 1291.

There is no dispute in this case that Deputy Cox was at all times acting within his discretionary authority.  The burden therefore, shifts to Mr. Smith to show that Deputy

Cox is not entitled to the defense of qualified immunity.  And at the motion to dismiss stage, this means that Mr. Smith must have alleged in his Amended Complaint sufficient facts to support a finding of a constitutional violation of a clearly established law.  Chandler v. Secretary of Florida Dept. of Transp., 695 F.3d 1194, 1198 (11th Cir. 2012).  He has failed to satisfy this burden.

### A.    Unlawful Arrest - Count VI

In Count VI of his Amended Complaint, Mr. Smith challenges his arrest for displaying his concealed firearm.  He does not challenge his initial stop by Deputy Cox for having an expired license plate decal.  See Doc. 16, ¶¶ 102-108.

When a police officer makes an arrest, the officer must have probable cause to believe that the arrestee has committed, is committing, or is about to commit a crime.  See Wood v. Kesler, 323 F.3d 872, 878 (11th Cir. 2003).  If the officer lacks probable cause, the arrest violates the Fourth Amendment, id., and "the arrestee has a claim under section 1983 for false imprisonment based on a detention pursuant to that arrest."  Ortega v. Christian, 85 F.3d 1521, 1526 (11th Cir. 1996).  But the existence of probable cause is an absolute bar to such claims.  Marx v. Gumbinner, 905 F.2d 1503, 1505–06 (11th Cir. 1990).

"For probable cause to exist, an arrest must be objectively reasonable based on the totality of the circumstances."  Lee v. Ferraro, 284 F.3d 1188, 1195 (11th Cir. 2002).  "This standard is met when the facts and circumstances within the officer's

knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (internal quotation marks omitted).  "To receive qualified immunity protection, an officer need not have actual probable cause but only arguable probable cause." Wood, 323 F.3d at 878 (internal quotation marks omitted).  Because only arguable probable cause is required, "the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997).  "When performing our arguable probable cause analysis [the Court] look[s] at the information known to the officer at the time of the [search]." Bailey v. City of Miami Beach, 476 Fed. Appx. 193, 197 (11th Cir. 2012) (citing Jones v. Cannon, 174 F.3d 1271, 1283 n. 4 (11th Cir. 1999)).

Deputy Cox arrested Mr. Smith for violating Fla. Stat. § 790.053(1), which prohibits any person from openly carrying on or about his person any firearm or electric weapon or device.  Mr. Smith alleges that the dashboard video from his arrest shows that at the time Deputy Cox decided to arrest Mr. Smith, only the bottom of the holster from his gun was visible, and that Fla. Stat. § 790.053(1) does not prohibit displaying or openly carrying a gun holster.  However, Mr. Smith has attached to his Amended Complaint a copy of Deputy Cox's internal investigation interview, in which he states that when Mr. Smith reached for his registration and insurance, Deputy Cox saw "a

very large hand gun strapped to his right hand side." (Doc. 16, Ex. A, p. 10).  Thus, the allegations of Mr. Smith's Amended Complaint, including the attached and incorporated transcript, reasonably demonstrate that Mr. Smith's weapon was visible - not just the tip of his holster.  Moreover, even if only the holster was initially visible, the Court finds that it would be reasonable for an officer to believe that when a person has a gun holster concealed under his shirt, the holster contains a concealed weapon.[6]

Therefore, after reviewing the Amended Complaint, the Court concludes that the facts alleged do not demonstrate that Deputy Cox lacked either probable cause or arguable probable cause to arrest Mr. Smith.  First, there is no contest that Deputy Cox's initial stop of Mr. Smith was proper on the basis of his expired license plate decal.  There is also no dispute that in 2009, even an accidental display of a concealed weapon constituted a violation of Fla. Stat. § 790.053(1).[7]  And, as discussed above, Deputy Cox stated in his interview that he arrested Mr. Smith <u>after</u> he accidentally displayed his concealed gun.  These facts created at a minimum arguable probable cause sufficient to justify Mr. Smith's arrest.  As such, the facts alleged do not establish

_____

[6]To the extent that Deputy Cox made a mistake in his initial observations, it was conduct "of the type that qualified immunity is meant to protect: 'a reasonable mistake in the legitimate performance of [an officer's] duties.'" <u>See</u> <u>Rushing v. Parker</u>, 599 F.3d 1263, 1267 (11th Cir. 2010) (quoting <u>Kingsland v. City of Miami</u>, 382 F.3d 1220, 1233 (11th Cir. 2004)).

[7]In 2011, Fla. Stat. § 790.053(1) was amended to provide that it is not a violation of the statute "for a person licensed to carry a concealed firearm . . ., and who is lawfully carrying a firearm in a concealed manner, to briefly and openly display the firearm to the ordinary sight of another person, unless the firearm is intentionally displayed in an angry or threatening manner, not in necessary self-defense."

a Fourth Amendment violation regarding Mr. Smith's arrest, and Deputy Cox is entitled to qualified immunity on this claim.

###### B.    Unlawful Search

After Deputy Cox arrested Mr. Smith, he directed his wife to get out of the car, and searched the van for weapons.  Deputy Cox did not obtain a warrant before conducting this search.  Relying upon the Supreme Court's decision in Arizona v. Gant, 556 U.S. 332, 129 S. Ct. 1710 (2009), a case decided three months before his arrest, Mr. Smith alleges that Deputy Cox did not have probable cause to conduct such a warrantless search, and therefore violated Mr. Smith's Fourth and Fourteenth Amendment rights.

Normally a police officer may not search a vehicle without a warrant.  However, there are two exceptions to this rule that may apply in this case.  First, there is an automobile exception, whereby a police officer may search a vehicle without a warrant where the vehicle is readily mobile (*i.e.*, operational), there is probable cause to believe the vehicle contains contraband or other evidence which is subject to seizure, and exigent circumstances necessitate a search or seizure.  See Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S. Ct. 2013, 2014 (1999); United States v. Watts, 329 F.3d 1282, 1285 (11th Cir. 2003); United States v. Talley, 108 F.3d 277, 281 (11th Cir. 1997).  Probable cause exists when the totality of the circumstances leads a reasonable person to believe that the vehicle contains contraband or evidence of a

crime. <u>Illinois v. Gates</u>, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983); <u>United States v. Goddard</u>, 312 F.3d 1360, 1363 (11th Cir. 2002).  Only a minimal showing of exigency is necessary to search a car without a warrant because of the vehicle's ability to move. <u>United States v. Alexander</u>, 835 F.2d 1406, 1409-10 (11th Cir. 1998).  And, as with the unlawful arrest claim, when an officer asserts the defense of qualified immunity in an unlawful search claim, the officer need only demonstrate that he had arguable probable cause to believe the vehicle contained contraband or evidence of a crime.  <u>See</u> <u>Cottrell v. Caldwell</u>, 85 F.3d 1480, 1485 n. 1 (11th Cir. 1996).

Based on the factual allegations of Mr. Smith's Amended Complaint, it is clear that Deputy Cox had at a minimum arguable probable cause to search his van.  At the time Deputy Cox searched the van, he had previously personally observed the van parked in the driveway of a home under surveillance for drug activity, and was aware that persons residing in this section of Citrus County were carrying firearms out of fear of drug dealers operating in the area.  In addition, Mr. Smith had a weapon on his person which he had not previously disclosed to Deputy Cox prior to his arrest, and which he had displayed in violation of Florida statutes.  Moreover, Mr. Smith's wife was standing near the vicinity of the van, had not been secured or handcuffed, and it was not known whether any additional weapons were in the vehicle that the wife could use against Deputy Cox.  This information is more than enough for a reasonable officer to conclude that there may be additional weapons (which could either be contraband or evidence of a crime) in the van, and that exigent circumstances existed.  Until Deputy

Cox searched the van and either secured any additional weapons or confirmed that none existed, his safety remained at issue.

The second exception that may apply in this case is the search incident to arrest exception.  In New York v. Belton, the Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."  453 U.S. 454, 460, 101 S. Ct. 2860, 2864 (1981).  Such searches have long been considered valid because of the need "to remove any weapons that [the arrestee] might seek to use in order to resist arrest or effect his escape" and the need to prevent the concealment or destruction of evidence.  Id. at 457, 101 S. Ct. at 2863 (quoting Chimel v. California, 395 U.S. 752, 763, 89 S. Ct. 2034, 2040 (1969)).  In Arizona v. Gant, however, the Supreme Court clarified that such warrantless searches are permitted only when the arrestee can reach the passenger compartment at the time of the search, or when the officer has a reasonable belief that the vehicle contains evidence of the crime of arrest.  556 U.S. at 350, 129 S. Ct. at 1723.

Gant, however, is readily distinguishable from the present case.  The defendant in Gant had been arrested for a traffic infraction and, along with two other suspects, had each been handcuffed and placed in the back of separate patrol cars.  556 U.S. at 336, 129 S. Ct. at 1715.  It was only after all persons who had been inside the vehicle had been handcuffed and secured that the two police officers searched the defendant's car without a warrant.  Id.  In this case, however, Mr. Smith was arrested

for a firearms violation.  More importantly, Mr. Smith's wife was still standing near the van, had not been handcuffed or secured, and was still arguably in a position to reach into the passenger compartment to obtain any weapons that may be in the vehicle. Thus, issues of officer safety very much remained in play at the time of the search, and the search of the van was necessary to remove any weapons that might be used to resist arrest or effect escape.  The Court concludes that under the totality of the circumstances, <u>Gant</u> does not apply and Deputy Cox was authorized to conduct a search of the van incident to his arrest of Mr. Smith.

For these reasons, the Court finds that the facts as alleged in Mr. Smith's Amended Complaint establish that Deputy Cox had either probable cause or arguable probable cause to conduct the search of his van, under either the vehicle exception or search incident to arrest exception.  Mr. Smith has therefore failed to properly allege that the warrantless search of his van was unlawful, and has failed to allege a violation of his constitutional rights.  Deputy Cox is entitled to qualified immunity as to Count V.

### C.    Clearly Established Law

Even if Mr. Smith's factual allegations were sufficient to demonstrate violations of his Fourth and Fourteenth Amendment rights, Deputy Cox is still entitled to qualified immunity because the law was not clearly established at the time of Mr. Smith's arrest that his actions were unconstitutional.  <u>Gonzalez</u>, 325 F.3d at 1234.  The inquiry of whether a constitutional right is clearly established is undertaken in light of the specific

facts of the case.  Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Whittier v. Kobayashi, 581 F.3d 1304, 1308 (11th Cir. 2009) (quotation omitted).  "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about) the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances."  Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 823 (11th Cir. 1997) (quoting Lassiter v. Alabama A & M Univ., 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc)).   To prove that the law was "clearly established," a plaintiff may point to either

> (1) earlier case law from the Supreme Court, [the Eleventh Circuit], or the highest court of the pertinent state that is materially similar to the current case and therefore provided clear notice of the violation or (2) general rules of law from a federal constitutional or statutory provision or earlier case law that applied with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of the Defendants' conduct.

Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007) (citing Marsh v. Butler Cnty., 268 F.3d 1014, 1031-33 (11th Cir. 2001) (en banc)).  "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant."  Smith v. Mattox, 127 F.3d 1416, 1419 (11th Cir. 1997) (internal quotations omitted).

The Court has been unable to locate any decisions from the Supreme Court or this Circuit based on materially similar facts that were in existence as of July 21, 2009,

which would have been sufficient to place Deputy Cox – or any reasonable law enforcement officer – on notice that the arrest of Mr. Smith and the search of his van were unconstitutional.   To the contrary, as discussed above, the applicable legal authorities placed Deputy Cox on notice that he possessed at least arguable probable cause to arrest Mr. Smith and search his vehicle, thereby rendering Deputy Cox's actions constitutional.

### Conclusion

Accordingly, upon due consideration, Deputy Cox's Motion to Dismiss (Doc. 23) is GRANTED.  All claims asserted against Deputy Cox in the Plaintiff's First Amended Complaint (Doc. 16, Counts IV, V, and VI), are DISMISSED.

The Plaintiffs, who are represented by counsel, have not filed a response to the motion to dismiss or requested leave to amend the claims, despite being afforded one previous opportunity by the Court to do so (Doc. 19).   In addition, the Magistrate Judge denied without prejudice the Plaintiffs' belated request for an extension of time to respond to the motion to dismiss (Doc. 27), yet the Plaintiffs never renewed their request.   Under these circumstances, where the Court has already provided the Plaintiffs with one opportunity to amend, and the Plaintiffs have failed to respond to a motion to dismiss and failed to seek further leave to amend, the Court is under no obligation to grant amendments *sua sponte*.   Wagner v. Daewoo Heavy Industries America Corp., 314 F.3d 541 (11th Cir. 2002).   Therefore the dismissal of these three

-22-

claims shall be without leave to amend, and the Clerk is directed to enter judgment accordingly.

Because all claims against all Defendants have now been fully and finally disposed of, <u>see</u> Docs. 28-29, the Clerk is further directed to terminate all other pending motions and to close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 10th day of September, 2014.

_____

UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
             Maurya McSheehy